UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NOLA H. BRISTOL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:16-cv-01649-JAR ) |
| FORD MOTOR COMPANY, et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER OF REMAND

This matter is before the Court on Plaintiff Nola H. Bristol's motion to remand this action to the Circuit Court for the City of St. Louis, Missouri, from which it was removed by Defendant Ford Motor Company ("Ford") (Doc. 37). The matter is fully briefed and ready for disposition. For the following reasons, the Court will grant the motion in part, and deny the motion in part.

### Background

On August 20, 2015, Plaintiff filed this civil action in the Circuit Court for the City of St. Louis, Missouri, naming Ford, Mendenhall Motor Company d/b/a Mendenhall Rebuilders ("Mendenhall") and twenty-two other defendants (collectively, "Defendants"). In her petition, she alleges that from 1972 until 1989, her husband, Gene Bristol, was employed as a mechanic at a Ford dealership in Utah; that in the course of that employment, he was exposed to large amounts of asbestos contained in products that Defendants manufactured, sold, and distributed; and that he developed mesothelioma as result of his workplace exposure to asbestos. Plaintiff sought relief under Missouri state law (Doc. 1.1 at 1-21).

On October 24, 2016, Ford removed the case to this Court (Doc. 1). In its notice of removal, Ford asserts (1) that as the sole remaining defendant in this action, it was not required to obtain the consent of any of the other Defendants before removing this action; (2) that the Court has diversity jurisdiction over this matter because the remaining parties—Plaintiff and Ford—are completely diverse and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332(a) (diversity jurisdiction); (3) that its notice of removal is timely because it was filed within thirty days of October 24, 2016, when Plaintiff dismissed Mendenhall and the action became removable[1]; (4) that the one-year limit for removing actions on the basis of diversity, as set forth in 28 U.S.C.§ 1446(c), does not preclude removal of this action because Plaintiff acted in bad faith to prevent timely removal by failing to prosecute her claim against Mendenhall.

Ford identifies the following facts as evidence that Plaintiff acted in bad faith to prevent removal. First, the state-court docket sheet shows that Plaintiff never sought discovery from Mendenhall, and Mendenhall never sought discovery from Plaintiff. Second, Plaintiff did not seek to depose Mendenhall's corporate representative in this action. Third, during a deposition of Mr. Bristol's former co-worker, Plaintiff offered a "product identification stipulation" to Mendenhall.[2] Fourth, Plaintiff did not respond to a motion for summary judgment filed by Mendenhall, but later responded to a summary judgment motion filed by another defendant. Finally, Mendenhall was dissolved in June 2010, and nothing suggests that Plaintiff sought to

---

[1] Mendenhall was the so called "removal spoiler" in this action. Plaintiff, Ford, and Mendenhall were, at all relevant times, completely diverse, i.e., Plaintiff did not share citizenship with either Ford or Mendenhall. However, Ford was barred from removing the action so long as Mendenhall, a Missouri resident, remained a defendant. See 28 U.S.C. § 1441(b)(2) (a civil action otherwise removable on the basis of diversity jurisdiction may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the state in which the action is brought).

[2] Plaintiff describes the "product identification stipulation" as a stipulation that the co-worker would not be able to identify Mendenhall as the manufacturer of any product to which

2

determine whether Mendenhall had a contract of insurance that would indemnify the company for Plaintiff's claim (Docs. 1 at 4-9; 1.57 (state court docket sheet); 1.58 (excerpt of deposition of co-worker); 1.59 (Mendenhall's summary judgment motion)).

Plaintiff now moves to remand this case back to the Circuit Court for the City of St. Louis (Docs. 36-37; 51). In support of her motion, Plaintiff first argues that Ford's removal of this case is procedurally defective because Ford has not obtained the consent of two other defendants who have not yet been dismissed (Doc. 36 at 5-6). Plaintiff also contends that Ford's removal is untimely, as the notice of removal was not filed within one year after Plaintiff filed her action in the state court (Id. at 6-8).

As to Ford's argument that she acted in bad faith to prevent removal, Plaintiff asserts that she actively litigated her claim against Mendenhall, and that there is no evidence she intentionally kept Mendenhall in the case solely to prevent removal. More specifically, she claims that she obtained substantial discovery from Mendenhall, albeit through discovery requests filed in a different asbestos-exposure lawsuit involving Plaintiff's counsel and Mendenhall; that as part of ongoing settlement negotiations, Mendenhall agreed that Plaintiff would not need to respond to its motion for summary judgment; and that she ultimately settled her claim against Mendenhall, for consideration, on October 24, 2016 (Id. at 3-5, 9-12). Plaintiff has produced a copy of an email that Mendenhall's counsel sent to Plaintiff's counsel on August 17, 2016 at 9:33 p.m., in which counsel for Mendenhall wrote, "Any chance a package deal of [another asbestos-exposure case] and Bristol might be of interest to you? Just thinking outside the usual box." (Doc. 36.16). Plaintiff has also submitted an affidavit from Plaintiff's counsel, dated October 24, 2016, in which counsel attests, inter alia, that Plaintiff and Mendenhall have

---

Mr. Bristol had been exposed.

3

agreed to a settlement in this case, but are awaiting "final approval" of the settlement from Mendenhall's insurer (Doc. 36.17).

Plaintiff also seeks sanctions against Ford under Rule 11 of the Federal Rules of Civil Procedure or the Court's inherent authority, and an award of costs, fees, and expenses under 28 U.S.C. § 1447(c) (Docs. 36-37, 51). According to Plaintiff, sanctions are warranted because Ford improperly removed this action on the first day of trial in the state court, and after its third motion for continuance was denied, for the purpose of delaying the state-court proceeding (Docs. 36 at 1, 13-15; 51 at 13-15).

Ford opposes Plaintiff's motion to remand, reiterating its arguments in support of removal (Docs. 50; 53-54). In support of its argument that it is the only remaining defendant in this action, Ford points to Plaintiff's October 24, 2016 response to a motion to dismiss for lack of personal jurisdiction filed by Ford in the state-court proceeding, which states "Plaintiff has litigated this case up to the eve of trial, and has resolved or dismissed her claims against every defendant other than Ford." (Doc. 1.61 at 30). According to Ford, this statement triggered a new thirty-day removal period under 28 U.S.C. § 1446(b)(3). Ford further asserts that this statement also establishes there are no other defendants from whom it was required to seek consent before removing this action (Doc. 50 at 2-6). Ford also opposes Plaintiff's request for sanctions, arguing that its removal was proper, that Plaintiff's request for Rule 11 sanctions is procedurally barred, and alternately, that sanctions are not warranted because it had a good faith basis in law and fact for removing the case to federal court (Docs. 41, 53-54).

**Analysis**

1. Ford was not required to obtain consent of other defendants.

Initially, the Court finds that Ford's notice of removal was not procedurally defective for failure to obtain the consent of other defendants. When a civil action is removed to federal court, all defendants who have been joined and served must generally join in or consent to the removal of the action. 28 U.S.C. § 1446(b)(2)(A). However, consent from dismissed defendants is not required. Chohlis v. Cessna Aircraft Co., 760 F.2d 901, 903 n.2 (8th Cir. 1985) (citations omitted) (settlement between plaintiff and non-diverse defendant may be final enough to support removal even in absence of formal entry of dismissal); see Midwestern Indem. Co. v. Brooks, 779 F.3d 540, 544 (8th Cir. 2015) (once claims against defendant who did not consent to removal were settled, removal was proper because continuation of suit against them would be a nullity). The Court concludes that Plaintiff's statement in her October 24, 2016 response in opposition to Ford's motion to dismiss was effective to establish that Ford was the only remaining defendant in this action. As such, Ford was not required to seek and obtain the consent of other defendants before filing its notice of removal.

2. This action became removable under 28 U.S.C. § 1446(b)(3) on October 24, 2016.

Section § 1446(b)(3) provides:

If the case stated by a plaintiff's initial complaint is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

The information supporting removal in "other paper" must be "unequivocally clear and certain to start the time limit running for a notice of removal under [§ 1446(b)]." Patrico v. A.W. Chesterton Co., No. 4:14cv00338AGF, 2014 WL 2197779, at *3 (E.D. Mo. May 27, 2014). "Federal courts do not impose upon a defendant a duty to investigate and determine removability where the initial pleading or subsequent document indicates that the right to remove may exist,

although a defendant must apply 'a reasonable amount of intelligence' to the matter." Id. at *4 (quoting Cutrone v. Mortg. Elec. Registration Systs., Inc., 749 F.3d 137, 143 (2d Cir. 2014). The Court concludes that Plaintiff's October 24, 2016 response to Ford's motion to dismiss was the first "amended pleading, motion, order, or other paper" from which Ford could ascertain that this case had become removable. Therefore, on October 24, 2016, this action first became removable, and a new thirty-day removal window was triggered pursuant to § 1446(b)(3).

3. Ford has not established that Plaintiff acted in bad faith to excuse the one-year bar on § 1446(b)(3) removals.

The Court concludes that this case was nevertheless not timely removed, as Ford did not file its notice of removal within one year from the date Plaintiff initiated the case, and Ford has not shown that Plaintiff acted in bad faith to prevent it from removing the action within one year. Section 1446(c)(1) provides that "[a] case may not be removed under [§ 1446(b)(3)] on the basis of [diversity] jurisdiction more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Ford does not dispute that it filed its notice of removal more than one year after Plaintiff commenced her action. At issue is whether Plaintiff acted in bad faith to prevent Ford from removing this case before § 1446(c)'s one-year limit for removal of diversity actions expired, i.e., that she acted in bad faith to prevent Ford from removing this action before August 20, 2016.

Federal courts must "resolve all doubts about federal jurisdiction in favor of remand" and are to strictly construe the removal statute, including its time limits for removal. Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007). As the party seeking removal, Ford bears the burden of establishing this Court's jurisdiction. Bowler v. Alliedbarton Sec. Servs., LLC, 123 F. Supp. 3d 1152, 1155 (E.D. Mo. 2015). The Eighth Circuit Court of Appeals does

6

not appear to have addressed the bad-faith exception to § 1146(c)'s one-year time limit for removing diversity actions to federal court. Both parties direct the Court to Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225, 1274-75 (D.N.M. 2014). In Aguayo, the district court developed the following two-step framework for analyzing the bad-faith exception:

> [T]he Court construes the bad-faith exception as a two-step standard. First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

Id. at 1274-77.

The Court finds this framework persuasive, while recognizing that it is not controlling and does not bind the Court. Under the Aguayo framework, Ford has failed to establish that Plaintiff acted in bad faith to prevent Ford from removing this action to federal court. First, Ford has not established that Plaintiff did not actively litigate her claims against Mendenhall. See id. at 1262 (plaintiff who actively litigates against removal-spoiling defendant is entitled to presumption of good faith). Plaintiff's counsel has represented to the Court that she engaged in settlement negotiations with counsel for Mendenhall over the course of several months, as reflected in the August 17, 2016 email between Plaintiff's counsel and counsel for Mendenhall. Moreover, Plaintiff represents that, on October 24, 2016, those negotiations culminated in a final settlement agreement, pursuant to which Plaintiff will receive compensation from Mendenhall.

7

Plaintiff has also provided plausible explanations for the absence of documented discovery on the state-court docket sheet, namely, that Plaintiff's counsel obtained discovery from Mendenhall pursuant to a discovery request filed in a different case, and Plaintiff's counsel had previously deposed Mendenhall's corporate representative in a different asbestos-exposure lawsuit. See Heacock v. Rolling Frito-Lay sales, LP, No. C16-0829-JCC, 2016 WL 4009849, *3 (W.D. Wash. July 27, 2016) ("[W]hile bad faith has been found where a plaintiff dismissed a defendant without conducting any discovery, even 'bare minimum' discovery attempts have been considered to not amount to bad faith.") (citations omitted); see also Heller v. Am. States. Ins. Co., No. CV 15-9771 DMG, 2016 WL 1170891, at *2-3 (C.D. Cal. Mar. 25, 2016) (plaintiff did not actively litigate claims against removal-spoiling defendant where she did not serve the defendant with a summons for more than one year); Lawson v. Parker Hannifin Corp., No. 4:13-cv-923-O, 2014 WL 1158880, at *4-6 (N.D. Tex. Mar. 20, 2014) (plaintiff did not actively litigate claims against removal-spoiling defendant where she failed to serve discovery request or notice his deposition, failed to seek default judgment when he failed to timely answer complaint, and nonsuited the defendant shortly after expiration of on year bar on removal to federal court).

In addition, Ford has not adduced any direct evidence that Plaintiff acted solely for the purpose of preventing Ford from removing this case to federal court before August 20, 2016. Aguayo, 59 F. Supp. 3d at 1274-75. Ford does not dispute that Plaintiff had a viable claim against Mendenhall. Rather, Ford argues that the August 17, 2016 email shows that Plaintiff had substantially settled her claims against Mendenhall before the one-year time for removal had expired, and that she intentionally waited until the first day of trial to disclose the agreement. The Court disagrees. At best, the August 17, 2016 email shows that Plaintiff and Mendenhall were actively engaged in settlement negotiations, but had not yet formalized the terms of an

agreement. There is no evidence that—between August 17, 2016 and August 20, 2016, the removal deadline—Plaintiff and Mendenhall formalized an agreement, Plaintiff failed to inform Ford and the state court of the agreement, and that Plaintiff did so for the purpose of preventing removal. Id. at 1264-65 (obtaining a settlement from the defendant is a permissible purpose for keeping a removal-spoiling defendant in a case).

    4.  <u>Plaintiff is not entitled to an award of costs, fees, expenses, or sanctions.</u>

When remanding an action to state court, a district court may require defendants to pay just costs and actual expenses that a plaintiff has incurred as a result of improper removal. 28 U.S.C. § 1447(c). An award of costs and fees under § 1447(c) is appropriate where the removing party lacked an "objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The Court concludes that Ford's attempt to remove this action pursuant to § 1446(c)'s bad-faith exception was not objectively unreasonable. When Ford filed its notice of removal, the state-court docket sheet did not reflect any discovery requests or notices of depositions between Plaintiff and Mendenhall. The state-court docket sheet also reflected that Mendenhall had filed a motion for summary judgment to which Plaintiff had not filed a timely response. Although Plaintiff has since provided reasonable explanations for the absence of such activity on the state-court docket sheet, i.e., ongoing settlement negotiations between Plaintiff and Mendenhall which culminated in a final settlement agreement on October 24, 2016, Ford was not privy to those communications. Under the facts and circumstances of this case, and given the apparent absence of binding Eighth Circuit authority on the scope of the bad-faith exception, the Court concludes that Ford had an objectively reasonable basis for seeking removal of this action under § 1446(c)'s bad-faith exception. The Court also declines to impose sanctions under Rule 11 or its own inherent authority. This Memorandum and Order shall not

disturb the authority of the Circuit Court for the City of St. Louis to require Ford to pay costs, fees, expenses, or sanctions arising out of Ford's conduct in attempting to remove this action to federal court. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand is **GRANTED IN PART AND DENIED IN PART**. The motion is granted to the extent it seeks remand of this action to the Circuit Court for the City of St. Louis, Missouri. The motion is denied to the extent it seeks an award of costs, fees, expenses, and sanctions.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court for the City of St. Louis under 28 U.S.C. § 1447(c). The Clerk of Court is directed to mail to the clerk of the Circuit Court for the City of St. Louis a certified copy of this Memorandum and Order.

**IT IS FINALLY ORDERED** that all other motions pending in this Court are **DENIED without prejudice as moot.**

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 27th day of October, 2016.